### MARY K. SMITH

#### v.

### BARKER GUMMERE, administrator &c., et al.

The general guardian of an infant was also appointed its special guardian to sell certain lands, and gave different bondsmen in each capacity. From his imperfect mode of keeping his accounts, it is impossible to tell now which of the two funds should be credited with a certain investment. In a litigation, after his death and insolvency, between the ward and the sureties upon his respective bonds—*Held,* that each fund should be credited with one-half of the amount of the investment.

*Mr. A. G. Richey,* for Jonathan Steward, one of the sureties in both bonds.

*Mr. J. S. Aitkin,* for Samuel K. Wilson, one of the sureties in general guardianship bond.

*Mr. James Buchanan,* for W. J. Owens, one of the sureties in the special guardianship bond.

*Mr. G. S. Cannon*, for General Mott's executrix.

THE CHANCELLOR.

.On the coming in of the master's report, made under the order referring the accounts back to him, the question is presented as to which account, that of the general guardianship or that of the special guardianship, should be credited with the mortgage of $5,000 mentioned in the former opinion in this cause. *Smith* v. *Gummere, 12 Stew. Eq. 27.* The investment in that mortgage was made by the guardian March 31st, 1875. The assignment of the mortgage was made to him as "guardian of Mary K. Smith." The account of the general guardianship shows that at the date of the assignment there should have been a balance in the hands of the guardian (not including interest on balances in his hands) of about $3,000. The investment, therefore, could not have been wholly made with the money of the ward held by the guardian on that account. On the other hand, the $7,000 invested by the guardian in 1865 in United States treasury notes of the second and third series of the seven-thirty loan, on account of the special guardianship, were. returned to his hands by the "calling" of the securities in 1867 or 1868, six or seven years before the making of the investment in the mortgage, but there is no trace of that money after the report of investment of it in the government bonds in 1865. There is nothing to show whether he had that money, or any part of it, when the latter investment was made. Nor, on the other hand, is there any evidence that he had any money in hand on account of the general guardianship. It is impossible to say out of which fund the money was taken, or that it, or any part of it, was in fact taken from either. For the reason before given, it could not all of it have been taken from the general guardianship fund. The fact that the assignment was taken by the guardian as guardian *simpliciter*, and not as special guardian, is not of itself sufficient, under the circumstances, to give the general guardianship the benefit of the investment, nor does it materially aid in determining the question under consideration. It seems quite probable that in taking the assignment he did

not intend to hold the mortgage for the benefit of the ward's estate at all; for the mortgage was upon his own property, which he bought subject to it, and he wrote on the envelope containing the mortgage the word "canceled." Under the circumstances, equality will be equity. It will be just to regard the investment as having been made with the funds of both accounts, in equal shares, and to credit one-half of it to each.